MEYERS LAW GROUP, P.C.
MERLE C. MEYERS, ESQ., CA Bar #66849
KATHY QUON BRYANT, ESQ., CA Bar #213156
44 Montgomery Street, Suite 1010
San Francisco, CA 94104
Telephone: (415) 362-7500
Facsimile: (415) 362-7515

Attorneys for Debtors-in-Possession
San Jose Airport Hotel, LLC and
Mobedshahi Hotel Group

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>SAN JOSE AIRPORT HOTEL, LLC, doing business as HOLIDAY INN SAN JOSE, *et al.*,[1]<br><br>Debtors. | Case No. 09-51045-RLE<br><br>Chapter 11 (Jointly Administered)<br><br>Date: December 2, 2009<br>Time: 10:30 a.m.<br>Place: U.S. Bankruptcy Court<br>280 South First St., Ctrm. 3099<br>San Jose, CA<br>Judge: Hon. Roger L. Efremsky |

### DEBTOR'S MOTION TO TERMINATE HOTEL FRANCHISE AGREEMENT

SAN JOSE AIRPORT HOTEL, LLC, doing business as HOLIDAY INN SAN JOSE ("SJAH"), and MOBEDSHAHI HOTEL GROUP ("MHG") as debtors and debtors-in-possession herein (SJAH and MHG, collectively, the "Debtors"), hereby move (the "Motion") the above-captioned Court for an order authorizing and approving, pursuant to 11 U.S.C. § 365, MHG's termination of that certain License Agreement dated June 27, 2006 by and between MHG, on the one hand, and Holiday Hospitality Franchising, Inc. ("HHFI"), on the other (the "Holiday Inn Agreement"), under which the Debtors operate SJAH's hotel known as the Holiday Inn San Jose, located at 1740 North First Street, San Jose, CA 95112 (the "Hotel"), pursuant to an agreement tentatively reached with HHFI as described below, and conditioned upon the closing of the sale of the Hotel, and other related assets (the "Proposed Sale") by the Debtors to SEVAK & SONS, L.P. (the

---

[1] The Debtors in these jointly administered cases are: San Jose Airport Hotel, LLC, Case No. 09-51045-RLE, and Mobedshahi Hotel Group, Case No. 09-51073-RLE.

1

DEBTOR'S MOTION TO TERMINATE HOTEL FRANCHISE AGREEMENT
24018.doc 20031

"Buyer").[2] The Motion is supported by the declaration of Manou Mobedshahi (the "Mobedshahi Declaration") filed concurrently herewith.

## I. STATEMENT OF FACTS

The record of this Court, together with the Mobedshahi Declaration, establishes the following pertinent facts:

### A. Background

1. SJAH filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on February 18, 2009 (the "Petition Date"). SJAH continues to operate its business as a debtor in possession pursuant to the provisions of Sections 1107(a) and 1108 of the Bankruptcy Code, no trustee having been appointed.

2. SJAH is a California limited liability company, formed in 1996 and originally known as Manco Partners LLC. On February 10, 1998, SJAH adopted its *Amended And Restated Operating Agreement*, wherein the Debtor's name was changed to San Jose Airport Hotel, LLC. Manou Mobedshahi, an individual, and San Jose Airport Hotel Investment Corporation ("SJAHIC"), of which Mr. Mobedshahi serves as president, are SJAH's sole members. SJAHIC, which is wholly owned by Mr. Mobedshahi, is the managing member of SJAH.

3. MHG, an affiliate of SJAH, also filed a voluntary chapter 11 petition relief in the above-captioned Court on February 19, 2009, case number 09-51073.

4. MHG is also wholly owned by Mr. Mobedshahi. MHG is the manager of the Hotel, pursuant to a management agreement between MHG and SJAH, and is the direct franchisee of the Holiday Inn brand under which the Hotel operates.

5. SJAH's primary asset consists of the operations of SJAH's hotel known as the Holiday Inn San Jose, located at 1740 North First Street, San Jose, CA 95112 (the "Hotel"). SJAH owns and operates the Hotel, and owns the real property and improvements upon which the Hotel is located.

---

[2] The Debtors have filed a separate motion seeking Court approval of the Proposed Sale pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code, and Rule 6004(h) of the Bankruptcy Rules (the "Sale Motion"). The hearing of the Sale Motion has been continued to December 2, 2009.

6.  The Hotel is a 512-room hotel operated under the "flag" or franchise of Holiday Inn and located near the San Jose International Airport, in San Jose, California. SJAH's operation of the Hotel generates revenue through guest room bookings, meeting room rentals, food and beverage services, and other guest services such as telephone and Internet use.

7.  As of the Petition Date, SJAH employed approximately 190 fulltime employees and approximately 30 part-time employees. In its last fiscal year, SJAH realized roughly $14 million in gross revenues. SJAH's obligations as of the Petition Date consisted of approximately $26 million in secured debt and approximately $1.9 million in unsecured debt, owed to more than 75 suppliers and other vendors.

8.  SJAH's chapter 11 filing was necessitated when the Debtor was unable to reach an agreement with General Electric Capital Corporation ("GECC") regarding an extension of its secured loan in the original principal amount of $32,000,000 (the "Loan"). Under the terms of the Loan documents, as subsequently modified by the parties, GECC holds a first priority lien against substantially all of SJAH's real and personal property assets, including rents generated by the operation of the Hotel. As of the Petition Date, the balance of the Loan, as asserted by GECC, was approximately $25.7 million.

9.  Since the commencement of the case, GECC has consensually allowed SJAH to use cash collateral, and seven interim orders have been entered approving SJAH's use of the same. The seventh interim order authorizes the Debtor's use of cash collateral through December 2, 2009.

10.  During the pendency of the Debtors' chapter 11 cases, Hotel operations have been streamlined in order to reduce operating expenses and improve overall financial performance. While the Hotel has performed well in its competitive market set (against other comparable hotels in the local geographical area), due to general market and economic conditions beyond the Debtors' control, SJAH anticipated that its cash balance will have been depleted in October 2009.

11.  In order to address its anticipated cashflow shortage, SJAH obtained Bankruptcy Court approval of a postpetition, junior-secured loan commitment from Mr. Mobedshahi to advance up to $650,000 for working capital, as needed to SJAH. The motion seeking approval of the debtor-

3

DEBTOR'S MOTION TO TERMINATE HOTEL FRANCHISE AGREEMENT
24018.doc 20031

in-possession borrowing was heard, and granted, by the Bankruptcy Court on September 23, 2009. Mr. Mobedshahi has since advanced funds to SJAH to cover cash shortfalls.

12. GECC has filed a motion for relief from the automatic stay in the Debtors' case to foreclose upon the Hotel. GECC's relief from stay motion has been set for a continued preliminary hearing on December 2, 2009. The Debtors have opposed GECC's motion.

### B. The Holiday Inn Agreement

13. As noted hereinabove, MHG and HHFI are parties to the Holiday Inn Agreement, which allows MHG to operate the Hotel as a Holiday Inn franchisee. According the language of the Holiday Inn Agreement, MHG holds a non-exclusive license to use certain brands, service marks, reservation systems, advertising, marketing programs, training programs, and other materials which comprise the Holiday Inn System, as that term is defined in the Holiday Agreement, in exchange for a monthly royalty of five percent (5%) and other additional fees as provided for by the Holiday Inn Agreement. The term of the franchise license is ten (10) years, and is non-renewable. A copy of the Holiday Inn Agreement is attached to the Mobedshahi Declaration as **Exhibit "A."**

14. The Holiday Inn Agreement also contains a provision that obligates MHG to perform a Product Improvement Plan (the "PIP") imposed by HHFI as licensor, at the end of the fourth anniversary of the Hotel's branding as a Holiday Inn, which will occur in 2010. Holiday Inn Agreement, p. 29, Section 16.C. The PIP will likely require the Debtors to expend a significant amount of estate funds to remodel the Hotel, and to make other required changes to the real and personal property to conform with current Holiday Inn brand standards, as required under the terms of the Holiday Inn Agreement.

### C. Hotel Sale Efforts

15. Prior to the Petition Date, SJAH, as seller, entered into a *Purchase And Sale Agreement (Shingal),* dated as of January 25, 2009 (the "Infinity Sale Agreement"), with Infinity HI, LLC, as buyer ("Infinity"), for the sale of the Hotel for the purchase price of $75,000,000,[3] (the "Infinity Sale"). Thereafter, Infinity defaulted in multiple respects and did not agree to any acceptable terms for remedying those defaults. Based upon those multiple defaults, SJAH terminated

---
[3] Under certain circumstances set forth in the Infinity Sale Agreement, the purchase price may be reduced to $73,000,000.

4
DEBTOR'S MOTION TO TERMINATE HOTEL FRANCHISE AGREEMENT
Case: 09-51045  Doc# 150  Filed: 11/23/09  Entered: 11/23/09 18:45:17  Page 4 of 9
24018.doc 20031

the Infinity Sale Agreement. As provided for by the terms of the Infinity Sale Agreement, SJAH retained Infinity's nonrefundable deposits and has reserved all claims against Infinity and related parties arising from Infinity's defaults.

16. After renewing its sale efforts, SJAH considered a number of proposals to purchase or develop the Hotel property. SJAH has now located a new prospective buyer of the Hotel, Sevak & Sons, L.P., (the "Buyer") for a purchase price of $46,200,000, (the "Sevak Transaction").[4] The Buyer is a California limited partnership that is owned in its entirety by Chandrakant Shah, and his wife, Mrudula C. Shah.

17. Mr. Shah is an experienced commercial real estate investor and hotelier with eleven years in the local hotel industry. Mr. Shah is also a principal of Sundowner Inn, L.P., a California limited partnership which owns and operates the Sundowner Inn located in Sunnyvale, California.

18. To memorialize the terms of the Hotel sale, SJAH, the Buyer, and Mr. Shah have entered into the *Purchase And Sale Agreement (Shah)* dated September 4, 2009 (the "PSA") and two subsequent amendments thereto (collectively, the "Sale Agreement"),

19. By the terms of the PSA, SJAH has agreed to sell, and the Buyer has agreed to purchase, the following assets (the "Subject Assets"): the Holiday Inn Property,[5] the Holiday Inn Agreement, the Trade Contracts, the Inventory and Equipment, the Liquor License and the Union Contracts.

20. The PSA is conditioned upon the Debtors obtaining Bankruptcy Court approval of the proposed sale free and clear of GECC's lien, and also authorizing the assumption and assignment of the Holiday Inn Agreement, the Trade Contracts, the Liquor Licenses and the Union Contracts pursuant to Section 365 of the Bankruptcy Code, upon their present terms or upon such modified terms as may be approved by both SJAH and Buyer.

21. Under the terms of the *Amendment To Purchase And Sale Agreement (Shah)* dated September 4, 2009, the Buyer has agreed to waive the condition that the Holiday Inn Agreement be assumed and assigned by the Debtors, provided that one or more agreements are entered into by and

---

[4] The purchase price may be reduced to $43,000,000 under certain circumstances.
[5] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Sale Agreement.

5
DEBTOR'S MOTION TO TERMINATE HOTEL FRANCHISE AGREEMENT
24018.doc 20031

among the Debtors, the Buyer and IHG (an affiliate of HHFI), terminating the Holiday Inn Agreement, and a new license agreement for a Holiday Inn franchise is entered into between the Buyer and IHG, incorporating the terms of a Product Improvement Plan dated September 10, 2009 prepared by IHG for the Buyer.

22. The Buyer has now been approved for, and is expected to enter into, a new Holiday Inn franchise agreement with HHFI. The Debtors, the Buyer and HHFI have also reached an agreement in principle concerning the termination of the Holiday Inn Agreement. That agreement in principle is in the process of documentation, and is expected to be substantially in the form of the draft *Agreement Regarding Termination Of License Agreement* dated November 18, 2009 (the "Termination Agreement") that is attached as **Exhibit "B"** to the Mobedshahi Declaration. An earlier form of the draft Termination Agreement, with no substantive differences from the current draft from the Buyer's perspective, has been approved by the Buyer. The Debtors therefore believe that the Termination Agreement is close to being finalized, and that it will be executed prior to the hearing of this Motion.

23. Under the terms of the proposed Termination Agreement, among others, conditioned upon entry of an order of the Bankruptcy Court approving the Proposed Sale and the Sale Agreement, and effective as of the Closing Date (as that term is defined within the Sale Agreement), the Holiday Inn Agreement shall be deemed terminated and rejected by MHG pursuant to the provisions of Section 365 of the Bankruptcy Code. HHFI shall have the right to file a proof of claim, or to amend its proof of claim, within thirty (30) days of the Closing Date for any amount(s) allegedly owed by MHG, based on the termination of the Holiday Inn Agreement.

24. Additionally, by the terms of the Termination Agreement, the Buyer and Seller agree to waive certain conditions and events required by the Sale Agreement with respect to the assumption and assignment of the Holiday Inn Agreement.

25. The Debtors have filed a separate motion seeking Court approval of the Proposed Sale pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code, and Rule 6004(h) of the Bankruptcy Rules (the "Sale Motion"), which was originally set for hearing on November 18, 2009. GECC has objected to the Sale Motion on various grounds. The Debtors and GECC have stipulated to a

6
DEBTOR'S MOTION TO TERMINATE HOTEL FRANCHISE AGREEMENT
Case: 09-51045   Doc# 150   Filed: 11/23/09   Entered: 11/23/09 18:45:17   Page 6 of 9
24018.doc 20031

continuance of the hearing of the Sale Motion to December 2, 2009, and the Debtors and GECC are presently engaged in negotiations in an attempt to resolve all disputes regarding the Sale Motion.

26. By way of this Motion, the Debtors seek authority to terminate the Holiday Inn Agreement pursuant to the terms of the Termination Agreement. The Motion is being noticed and heard pursuant to an order shortening time which was entered by the Court on November 20, 2009.

## II. DISCUSSION

Section 365 of the Bankruptcy Code of the Bankruptcy Code authorizes a trustee or debtor in possession to assume or reject an executory contract or unexpired lease subject to bankruptcy court approval. 11 U.S.C. § 365(a). "Generally, a Bankruptcy Court is to review a decision by a debtor in possession or a trustee to reject an executory contract, and order rejection if the rejection is based on the debtor or trustee's best business judgment in the circumstances." *In re Steaks To Go, Inc.*, 226 B.R. 35, 37 (Bankr.E.D.Mo. 1998) (citing *In re Spectrum Information Technologies, Inc.*, 190 B.R. 741, 745 (Bankr.E.D.N.Y. 1996)).

As demonstrated by the Debtors below, their decision to reject the Holiday Inn Agreement through the consensual termination with HHFI and the Buyer, is in the best interest of the estate, as it will likely to relieve the estate of the significant financial burden that would be potentially imposed on the estate, based on additional royalty payments and PIP performance obligations which would necessarily be incurred in 2010, and it will facilitate the pending Sevak Transaction.

### 1. The Holiday Inn Agreement Is An Executory Contract.

The Ninth Circuit Appellate Panel has recognized that, "An executory contract is one 'on which performance remains due to some extent on both sides. . . . More precisely, a contract is executory if 'the obligations of both parties are so unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other.'" *Unsecured Creditors Comm. v. Southmark Corp. (In re Robert L. Helms Construc. And Dev. Co., Inc.)*, 139 F.3d 702, 705 (9th Cir. 1998) (citations omitted). "The date a bankruptcy petition is filed is the critical time for determining whether a contract is executory." *RCI Technology Corp. v. Sunterra Corp. (In re. Sunterra Corp.)*, 361 F.3d 257, 264, n. 12 (4th Cir. 2004).

Franchise agreements have been found to be executory in nature for Section 365 purposes. *In*

*re Steaks To Go, Inc.*, 226 B.R. 35 (Bankr.E.D.Mo. 1998); *Burger King Corp. v. Rovine Corp. (In re Rovine Corp.)*, 6 B.R. 661 (Bankr.W.D.Tenn. 1980). In general, franchise agreements require "a continuing cooperative effort between franchisor and franchisee." *Rovine*, *supra*, at 665.

Here, the Holiday Inn Agreement is an executory contract which the Debtors may properly reject under Section 365(a). There is significant performance due by both MHG and HHFI, as the parties are only approximately three and one-half years into a ten year term on the Holiday Inn Agreement, which was entered into by MHG and HHFI in 2006. Those performance obligations include MHG continuing to pay royalty fees to HHFI for its license to use the Holiday Inn System, and to perform the PIP; and HHFI's continuing performance to maintain the quality of its brand and to provide training, among others. Failure by either MHG or HHFI in performing these respective obligations would result in a material breach of the Holiday Inn Agreement, and therefore, the agreement is executory for purposes of rejection under Section 365(a).

**2.** **<u>Termination of the Agreement Is Within The Debtors' Reasonable Business Judgment.</u>**

In the Ninth Circuit, the standard for determining whether an executory contract or unexpired lease should be assumed, or in this case, rejected, is the debtor's "business judgment" determination that the assumption is in its economic best interests. *See, e.g., In re G.I. Industries, Inc.*, 204 F.3d 1276, 1282 (9th Cir. 2000) ("a bankruptcy court applies the business judgment rule to evaluate a trustee's rejection decision"); *In re S. Cal. Sound Sys., Inc.*, 69 B.R. 893, 896 (Bankr.S.D.Cal. 1987) ("Most courts have allowed the trustees to exercise their business judgment in determining which contracts to assume or reject"). The standard by which a debtor in possession should exercise its business judgment has been stated as follows:

> What are the criteria which the court and the trustee [debtor in possession] should legitimately consider in exercising their 'business judgment?' The primary issue is whether [assumption or] rejection would benefit the general unsecured creditors.

*In re Chi-Feng Huang*, 23 B.R. 789, 801 (9th Cir. B.A.P. 1982).

In *In re Steaks To Go, Inc.*, 226 B.R. 35 (Bankr.E.D.Mo. 1998), the court held that the debtor's best business judgment and the best interests of the estate supported rejection of franchise agreements by the debtor. There, the record supported that neither the debtor franchisee, nor the creditor franchisor, were desirous of continuing the franchise agreements, and the debtor's financial

8
DEBTOR'S MOTION TO TERMINATE HOTEL FRANCHISE AGREEMENT

performance was unprofitable for the majority of its existence under the agreements. *Id.* at 37. Based on these facts, the court found that continued operations as a franchise under the franchise agreements was not in the best interests of the estate. *Id.* at 38.

In the case at bar, rejection of the Holiday Inn Agreement is both within the Debtors' reasonable business judgment and in the best interests of creditors. The Debtors are operating at a loss, as evidenced by the need for its postpetition borrowing from its DIP lender, Mr. Mobedshahi, to cover ongoing operational losses, including royalty fees payable to HHFI. Further, the PIP that the Debtors would likely be required to perform in 2010 under the terms of the Holiday Inn Agreement, would likely require a significant amount of estate funds to be expended to modernize and improve the Hotel to conform with then current standards imposed by HHFI as the franchisor. Further yet, termination of the Holiday Inn Agreement will facilitate the completion of the Sevak Transaction, and will not be effectuated without it. Finally, just as the parties in *Steaks To Go* were mutually desirous of terminating their franchise agreements, here, the Debtors and HHFI are also desirous of consensually terminating the Holiday Inn Agreement, as evidenced by the Termination Agreement. Accordingly, rejection of the Holiday Inn Agreement is warranted pursuant to Section 365(a) of the Bankruptcy Code.

### III. CONCLUSION

Based upon all of the foregoing reasons, the Debtors respectfully request that the Court approve the Termination Agreement substantially in the form presented in Exhibit "B" of the Mobedshahi Declaration, and approve the Debtors' rejection of the Holiday Inn Agreement pursuant to Section 365(a) of the Bankruptcy Code, conditioned upon the closing of the Proposed Sale.

DATED: November 23, 2009

MEYERS LAW GROUP, P.C.


By  /s/ Merle C. Meyers, Esq.
Attorneys for Debtors-in-Possession