MICHAEL A. ISAACS, State Bar No. 99782
michael.isaacs@dentons.com
DENTONS US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, California 94105
Telephone: (415) 267-4000
Facsimile: (415) 267 4198

Attorneys for MOHAMED POONJA,
Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>SAN JOSE AIRPORT HOTEL, LLC,<br>doing business as<br>HOLIDAY INN SAN JOSE, *et al.*,[1]<br><br>Debtors.<br><br>Fed. Tax ID No. 77-0428062 | Case No. 09-51045-SLJ<br>Chapter 7<br>(Jointly Administered With 09-51073-SLJ)<br>Hon. Stephen L. Johnson<br><br>**MOTION TO COMPROMISE CONTROVERSY WITH JUDGMENT DEBTOR**<br>**(Chandrakant (CK) Shah)**<br>**[F.R.B.P. 9019(a); B.L.R. 9014-1(b)(3)]**<br><br>[No Hearing Required Unless Requested] |

---

[1] The Debtors in these jointly administered cases are: San Jose Airport Hotel, LLC, Case No. 09-51045-SLJ and Mobedshahi Hotel Group, Case No. 09-51073-SLJ.

# TABLE OF CONTENTS

I. SUMMARY OF COMPROMISE ...........................................................................................1

II. JURISDICTION / VENUE .....................................................................................................1

III. BACKGROUND ....................................................................................................................1

IV. THE COMPROMISE .............................................................................................................3

    A. Terms of the Agreement ..............................................................................................3

    B. Other Terms .................................................................................................................5

V. PENDING LITIGATION ........................................................................................................5

VI. THE TRUSTEE'S POSITION ................................................................................................7

VII. THE JUDGMENT DEBTOR'S POSITION ...........................................................................8

VIII. ANALYSIS OF THE COMPROMISE ...................................................................................9

    A. The Trustee's Probability of Success ..........................................................................9

    B. The Difficulty of Collection .......................................................................................10

    C. The Complexity, Expense and Inconvenience of Litigation......................................10

    D. The Paramount Interest of Creditors..........................................................................11

IX. THE RESOLUTION IS APPROPRIATE UNDER THE TRUSTEE'S BUSINESS JUDGMENT..........................................................................................................................11

X. CONCLUSION AND PRAYER ...........................................................................................12

**TO THE HON. STEPHEN L. JOHNSON, UNITED STATES BANKRUPTCY JUDGE:**

Mohamed Poonja, Chapter 7 Trustee of the estate of the above-named Debtors, files this Motion to Compromise Controversy With Judgment Debtor (Chandrakant (CK) Shah) [F.R.B.P. 9019(a); B.L.R. 9014-1(b)(3)] ("Motion") and respectfully represents as follows.

## I. SUMMARY OF COMPROMISE

If the compromise is approved, the Trustee will enter into a settlement agreement with a judgment debtor in this case, by which the Trustee will accept the sum of $8,500,000 in cash in full, final and complete satisfaction of a judgment in the sum of $11,648,758 obtained in 2013 in a related adversary proceeding, as described in further detail below.

## II. JURISDICTION / VENUE

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334(a) and 157. Venue is proper under 28 U.S.C. §§ 1408 and 1409. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). The Motion requests Court authorization for a compromise with judgment debtor.

## III. BACKGROUND

A. San Jose Airport Hotel, LLC, doing business as Holiday Inn San Jose filed a voluntary Chapter 11 petition on February 18, 2009.

B. Mobedshahi Hotel Group filed a voluntary Chapter 11 petition on February 19, 2009.

C. On August 26, 2009, the Court entered its Order Directing Joint Administration of Related Chapter 11 Cases, wherein the Chapter 11 case of San Jose Airport Hotel, LLC ("SJAH") was ordered jointly administered with the case of Mobedshahi Hotel Group, ("Mobedshahi"). On May 7, 2010, the Court entered its Order Converting Cases to Chapter 7 wherein both the cases of SJAH and Mobedshahi (collectively, the "Debtors") were converted to Chapter 7.

D. The Trustee is the duly appointed and qualified Chapter 7 Trustee of the Debtors' estates.

E. On August 11, 2011, as Docket No. 1 the Trustee caused to be filed Adversary Proceeding No. 11-05236 styled as *Mohamed Poonja, Chapter 7 Trustee for San Jose Airport*

1

1  *Hotel, LLC, dba Holiday Inn San Jose, Debtor, and Mobedshahi Hotel Group, Debtor vs. Sevak &*
2  *Sons, L.P., a California limited partnership; Chandrakant Shah, an individual, and Mrudula C.*
3  *Shah, an individual.*

4       F.      On August 26, 2013, by way of a "Judgment in an Adversary Proceeding," the Hon. Stephen L. Johnson, United States Bankruptcy Court, Northern District of California, entered a judgment (the "Judgment") against Chandrakant (CK) Shah individually ("Mr. Shah") for $11,648,758. Costs and attorney fees were added to the Judgment in the amount of $203,249.93 by order of Judge Johnson post-trial on October 24, 2013.

      G.      Mr. Shah appealed the Judgment to the District Court, resulting in a remand to the Bankruptcy Court on June 17, 2016 for further findings on causation and damages.

      H.      On remand, Judge Johnson of the Bankruptcy Court, based on the same record, reaffirmed the original judgment on February 7, 2017.

      I.      Mr. Shah, again, appealed to the District Court, which affirmed the Bankruptcy Court's decision on March 22, 2018 in an "Order Affirming Judgment of Bankruptcy Court."

      J.      Mr. Shah appealed to the Ninth Circuit Court of Appeal, which affirmed the Judgment.

      K.      The Judgment entered by the Bankruptcy Court and affirmed by the District Court and the Ninth Circuit is now final and in the sum of $11,648,746, together with attorneys' fees approved at $203,249.93 and interest accrued thereon, together with additional attorneys' fees that may be sought totaling approximately $800,000, the Judgment is now in the sum of approximately $12,800,000 or more ("Final Judgment").

      L.      Upon the entry of the Final Judgment and prior thereto, levies were asserted against assets owned by Mr. Shah and/or others by the Trustee in an attempt to enforce the Final Judgment, with those efforts ongoing, including a proposed motion to add additional defendants[2] (the "Third Party Defendants") to the Final Judgment (the "Section 187 Motion").

/ / /

---

[2] Kamal Holdings, LLC, 1130-1132 Independence Mountain View, LLC, Sundowner Inn, LLC, County Inn, LLC, Quimby Road Ranch, LLC, and SKCM, LLC

M. The Trustee is currently in possession of or claiming rights to approximately $1,842,337 as a result of his efforts to enforce the Judgment (the "Levied Funds," as detailed below).

N. Mr. Shah, his spouse, Mrudula Shah[3] and certain of the Third Party Defendants claim rights to or exemptions in a portion of the Levied Funds.

## IV. THE COMPROMISE

Attached as Exhibit A to the Declaration of Mohamed Poonja in Support of Motion to Compromise Controversy With Judgment Debtor is a copy of a fully executed Settlement Agreement between Chandrakant (CK) Shah and Mrudula C. Shah (collectively, "Shah") and Mohamed Poonja, in his capacity as Chapter 7 Trustee of the Debtors' estate (the "Agreement"). While the terms are specifically spelled out in the Agreement, they are summarized as follows:

### A. Terms of the Agreement

1. The Trustee agrees to accept the sum of $8,500,000 cash, in full and complete satisfaction of the Final Judgment; provided, however, the total amount is paid prior to January 31, 2021 (the "Settlement Amount"). In the event the Settlement Amount is not paid by that date, any funds paid or already controlled by the Trustee will be applied toward the amount owed under the Final Judgment. Unpaid amounts will continue to accrue interest, attorneys' fees and costs in the interim and collection efforts will be reinstated.

2. Within 10 days of the Trustee filing this Motion, Shah shall pay the Trustee $400,000 (the good faith deposit). If the Trustee fails to obtain an order approving this Motion by December 31, 2020, the Trustee will return the good faith deposit.

3. The balance between the Settlement Amount and the levied funds and the good faith deposit (the settlement balance) shall be paid on or before January 31, 2020.

4. The Trustee will reasonably and in good faith cooperate with Shah and work with potential lenders through their escrow companies to allow new lenders to record liens on property owned by Shah or any Third Party Defendants in order to fund the settlement balance.

---

[3] Mrudula Shah is a party to the compromise but is not a judgment debtor.

3

5. The levied funds consist of the following:

| | | |
|---|---|---|
| i. | $259,705.31 | Received by the Trustee from the escrow account held by Old Republic Title Company. |
| ii. | $364,856.66 | Received by the Trustee from the liquidated Schwab IRA account. |
| iii. | $624,561.97 | Subtotal of i. and ii. above. |
| iv. | $695,941.56 | Amount reported by Wells Fargo Bank in Account Number xxxxxx0467 on levy date, October 22, 2019 |
| v. | $10,982.15 | Amount reported by Wells Fargo Bank in Account Number xxxxxx1385 on levy date, October 22, 2019 |
| vi. | $205,337.05 | Loan Value of MetLife Retail Account Number xxxxx3601PR MLIV, reported by MetLife on January 2, 2020 |
| vii. | $304,515.06 | Loan Value of MetLife Retail Account Number xx3116 GENAM, reported by MetLife on January 2, 2020 |
| viii. | | The amount noted in iii. above, $624,561.97, is an immediate credit toward the Settlement Amount. |
| ix. | | With respect to iv. through vii. above, upon entry of the 9019 Order, Shah shall immediately sign a stipulation for an order of the Bankruptcy Court that all funds and policies levied by the U.S. Marshal and held by Wells Fargo Bank and MetLife shall be forthwith released to the Trustee. Upon receipt of those funds, the exact amount received will be a credit towards the Settlement Amount, reducing the remaining unpaid balance to approximately $6,658,662.21 to be satisfied as set forth in section 3b(ii) – (iii), above. |

Paragraphs i. through ix. above are collectively the "Levied Funds."

6. As described above, if the Trustee does not receive timely performance under the terms of the Agreement, monies received shall be retained by the Trustee but be a credit toward the Final Judgment.

**B. Other Terms**

There are currently various disputed matters pending before the Court with respect to the Levied Funds, certain exemptions claimed by Shah or claims asserted by third parties controlled by Shah as to ownership of certain funds. Motions[4] are pending filed by the Trustee to add as additional judgment debtors multiple entities owned or controlled by Shah.

Various motions have been filed by Shah asserting that some of the Levied Funds should be returned or released: $364,856.66 (the "IRA") received by the Trustee from a retirement account, Wells Fargo accounts with Social Security payments, and substantial sums that allegedly belong to Kamal Holdings, LLC, an entity controlled by Shah; and that insurance policies (loan values) are either held by an irrevocable trust or should be exempt.

The Court has ruled in favor of Shah on certain matters, e.g. Social Security exemptions and the insurance policy held by an irrevocable trust, other matters are under submission by the Court and other contested matters are subject to pending hearings. Under the terms of the Agreement, all matters will be stayed or re-set, as necessary, to a time period after January 31, 2021.

General releases will be effective upon the payment of the Settlement Amount in full.

**V. PENDING LITIGATION**

As indicated, various actions have been taken by the Trustee to enforce the Judgment and, thereafter, to enforce the Final Judgment. As noted above, the Levied Funds have been attached by the Trustee. However, in addition to the Levied Funds, the Trustee has caused to be filed the following documents:

/ / /

/ / /

---

[4] See Page 3, Footnote 1

Motion to Amend Judgment to Add Alter-Egos and Spouse of Judgment Debtor
- Notice of Hearing on Motion to Amend Judgment to Add Alter-Egos and Spouse of Judgment Debtor
- Memorandum of Points and Authorities in Support of Plaintiff's Motion to Amend Judgment to Add Alter-Egos and Spouse of Judgment Debtor
- Declaration of James A. Hennefer in Support of Plaintiff's Motion to Amend Judgment to Add Alter-Egos and Spouse of Judgment Debtor
- Declaration of Stephan A. Fraser in Support of Plaintiff's Motion to Amend Judgment to Add Alter-Egos and Spouse of Judgment Debtor
- Request for Judicial Notice in Support of Plaintiff's Motion to Amend Judgment to Add Alter-Egos and Spouse of Judgment Debtor Plaintiff's Motions to Amend Judgment and for Orders to Comply With Levies of U.S. Marshal

Motion for Order to Comply With Levy (Wells Fargo Bank)
- Notice of Hearing on Motion for Order to Comply With Levy (Wells Fargo Bank)
- Memorandum in Support of Order to Comply With Levy (Wells Fargo Bank)
- Declaration of James A. Hennefer in Support of Hearing and Order to Comply With Levy (Wells Fargo)

Motion for Order to Comply With Levy (Met Life)
- Notice of Hearing on Motion for Order to Comply With Levy (Met Life)
- Memorandum in Support of Order to Comply With Levy (Met Life)
- Declaration of James A. Hennefer in Support of Hearing and Order to Comply With Levy (Met Life)

In effect, the Trustee takes the position that assets were transferred by Shah, not for the purpose of estate planning but rather to avoid the effects of the Judgment that was recorded against multiple properties owned by Shah or by limited liability corporations owned or controlled by Shah.

In response, Shah has filed the following documents:

Opposition to Plaintiff's Motion to Amend Judgment to Add Alter-Egos and Spouse of Judgment Debtor
- Omnibus Declaration of Chandrakant Shah
- Supplemental Opposition to Plaintiff's Motion to Amend Judgment to Add Alter-Egos and Spouse of Judgment Debtor
- Defendants' Request for Judicial Notice

Opposition to Plaintiff's Motion for Order to Comply With Levy (Met Life)
- Omnibus Declaration of Chandrakant Shah
- Supplemental Opposition to Plaintiff's Motion for Order to Comply With Levy (Met Life)

6

Opposition to Plaintiff's Motion for Order to Comply With Levy (Wells Fargo Bank)
- Omnibus Declaration of Chandrakant Shah
- Supplemental Opposition to Plaintiff's Motion for Order to Comply With Levy (Wells Fargo Bank)

Declaration of Wayne A. Silver

Supplemental Omnibus Declaration of Chandrakant Shah

Supplemental Declaration of Wayne A. Silver

Third Party Defendants filed the following documents:

Opposition to Motion to Amend Judgment to Add Alter Egos and Spouse of Judgment Debtor
- Declaration of Stephen D. Finestone in Support of Objection to Motion to Amend Judgment to Add Alter Egos and Spouse of Judgment Debtor

## VI. THE TRUSTEE'S POSITION

The Trustee's position is quite simple. The Final Judgment, now with interest and attorneys' fees that can be asserted, is in the sum of approximately $12,800,000, is owed and should be paid. The Trustee, through special counsel, pursued Shah by way of the trial, an appeal, a second trial and appeal and an appeal to the Ninth Circuit Court of Appeal. The Final Judgment has been entered, Shah has assets and the amounts should be paid. There is no dispute as to the Final Judgment.

In an attempt to collect the Final Judgment, the Trustee received $259,705 (deposit at title company) and $364,856 (the IRA). In addition, the Trustee has levied upon a variety of accounts controlled by Shah, including two life insurance policies. As indicated, the Trustee has filed a motion seeking to obtain an order from the Bankruptcy Court directing Shah's bank and others to turn over funds. The Trustee has been partially successful in that regard. However, no matter what happens in the interim concerning contested matters, there is no doubt that Shah owns or controls substantial property that can be utilized to pay the Final Judgment. The majority of these assets are held by limited liability companies controlled by Shah, some of which supposedly were transferred for estate planning purposes. This includes two small hotels and a personal residence, all of which

the Trustee believes have substantial value. As will be explained, the residence is of substantial value. The Trustee believes that, notwithstanding it being held in the name of one of the Third Party Defendants, the residence itself could be liquidated with a substantial recovery to the estate.

## VII. THE JUDGMENT DEBTOR'S POSITION

Shah does not dispute his liability for the Final Judgment. However, he asserts that, notwithstanding representations made previously before the Court, the Shah net worth has been dramatically affected by the Covid-19 pandemic. Assets that were money-makers in the past are now a drain on his finances. Occupancy is low at two hotels controlled by Shah, the Sundowner Inn and the County Inn, but expenses continue. Further, Shah argues that funds that had been levied upon by the Trustee should not have been levied upon and should be returned to him. Shah also asserts that the ability to obtain monies to pay the judgment in full cannot be arranged because of his current asset base. Further, it is difficult to get loans and they would be costly. In the event a compromise is not approved, Shah will evaluate other alternatives that would delay any collection efforts by the Trustee for a substantial period of time.

In Shah's opposition to the Section 187 Motion to amend the judgment and to add alter-egos and the spouse of judgment debtor, he asserted that Mrudula Shah should not be a judgment debtor, since the judgment debtor is only Shah. The Court has agreed with that position. Shah has submitted a multitude of arguments that, under the California Code of Civil Procedure § 187, the Third Party Defendants are not alter-egos, in that, they had no representation at the time the lawsuit was initially prosecuted against Shah. Shah asserts that none of the factors considered in applying the alter-ego doctrine are present; accordingly, the Trustee's Section 187 Motion should be denied.

With respect to the Levied Funds, i.e., the insurance policies (value approximately $509,000) Shah asserts that one policy is owned by the Shah Irrevocable Trust, a spendthrift trust established in 1992 and therefore cannot be attached by the Trustee.

With respect to the second insurance policy, Shah asserts statutory exemptions.

Likewise, with that portion of the Levied Funds involving the Wells Fargo Bank account, defects are asserted with respect the levy procedures and statutory exemptions.

///

8

While the Trustee asserts that the transfers were made without consideration to the Third Party Defendants, Shah explains that the transfers were made for estate-planning purposes and not to avoid the Judgment.

Third Party Defendants have their own counsel and assert that the Trustee cannot satisfy the requirements under C.C.P. § 187 and that the Trustee's various motions were procedurally flawed, among other assertions.

## VIII. ANALYSIS OF THE COMPROMISE

The Trustee believes that the compromise with the Judgment Debtors is in the best interest of the estate, meets the standards of *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986); *cert. den. sub nom Martin v. Robinson*, 479 U.S. 854 (1986) and should be approved.

The approval or rejection of a compromise is within the Bankruptcy Court's discretion. In considering the approval of a proposed compromise, the Court must take into account the following factors: (A) the probability of success in the litigation; (B) the difficulty, if any, to be encountered in collection; (C) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and (D) the paramount interest of creditors and a proper deference to their reasonable views.

### A. The Trustee's Probability of Success

While the Trustee believes that, in the long run, he will most likely be successful if he attempts to collect the full amount of the Final Judgment, nothing is certain. Based upon the Trustee's analysis of the assets that could be available, the Trustee believes that the Shahs' residence in Los Altos Hills, currently owned by Kamal Holdings, LLC, is probably worth between $6 million and $7 million. Although the Trustee could be required to return some levied funds and grant exemptions and may not be able to liquidate one or possibly both of the insurance policies, considering the value of the residence, together with the value of the Sundowner Inn and the County Inn, the Trustee believes there is a reasonable chance that, ultimately, he would be successful in collecting the Final Judgment, although numerous complications would occur, along with risk that senior lienholders would act against Shah assets. However, it is also possible that liquidation values

currently estimated by the Trustee might not be obtained.

### B. The Difficulty of Collection

As indicated by the multitude of motions and responses described in this Motion, collection will be difficult. Monies already received might have to be returned. At most, only one of the insurance policies could be levied upon. Kamal Holdings, LLC has asserted a claim to monies held in the Wells Fargo Bank account (i.e., part of the Levied Funds) in the sum of approximately $500,000, arguing that those funds belong to Kamal Holdings and were in the Wells Fargo Bank account levied upon by the Trustee but should be returned to Kamal Holdings. The Trustee believes that it is possible that he could prevail in an evidentiary hearing on his Section 187 Motion, but the outcome is unclear. Thus far, the Court has allowed late exemptions to be asserted by Shah and held certain assets as unavailable to the Trustee. Further, the Trustee does not know if, when he attempts to liquidate an interest held by a limited liability corporation, whether third-party claims will be asserted. Based on what has happened thus far, since the Judgment became final, it is obvious that Shah and the Third Party Defendants will resist any attempts to liquidate assets, possibly going so far as to have Shah or the Third Party Defendants file for relief under Chapter 11 of the Bankruptcy Code. If that occurred, collection could be difficult and possibly substantial delays would occur.

### C. The Complexity, Expense and Inconvenience of Litigation

With respect to the Final Judgment, the Trustee has had special counsel, who has pursued this matter for ten years, through multiple appeals. Now that the Judgment is final, expenses have been incurred and complex issues have been addressed. Substantial effort has been expended by special counsel and the Trustee to file appropriate motions, seek relief from the Court and to add the Third Party Defendants as judgment debtors. However, the Court now has set an evidentiary hearing, which will involve further litigation, with the outcome unknown. Considering what has happened thus far, the potential for further costs, delay and litigation on multiple fronts, the Trustee believes the compromise is in the best interest of the estate.

///

///

### D. The Paramount Interest of Creditors

In many respects, the Trustee believes this is a very important factor in considering settlement. Creditors in this case have not been paid since 2009, when the Debtor filed for relief under Chapter 11 of the Bankruptcy Code. Attempts to sell the Debtors' principal asset failed, resulting in litigation against Shah (and others), ultimately resulting in the Final Judgment. If litigation continued, collection efforts would be vigorously resisted and further delays would occur. If Shah or the Third Party Defendants decided to file for relief under Chapter 11 of the Bankruptcy Code, further delays would result. Accordingly, the Trustee has concluded that, while he has agreed to a substantial discount of the Final Judgment, accepting $8,500,000 now is in the best interests of the creditors, rather than subjecting them to further lengthy delays while collection efforts continued.

Regarding the compromise reached, the negotiation process between the Trustee and Shah has been ongoing in earnest since the end of March 2020, culminating in resolution this week. Multiple attempts were made to compromise, with all prior attempts failing. The Trustee believes that accepting the sum agreed to ends an 11-year case and will allow the Trustee to close it.

## IX. THE RESOLUTION IS APPROPRIATE UNDER THE TRUSTEE'S BUSINESS JUDGMENT

Ninth Circuit case law has indicated that, in addition to meeting the fair and equitable test noted above, when a trustee compromises with a defendant, the trustee's business judgment comes into play, i.e., *In re Lahijani*, 325 B.R. 282 (9th Cir. BAP 2005), *In re Mickey Thompson Entertainment Group, Inc.*, 292 B.R. 415 (9th Cir. BAP 2003) and, further, *In re Berkeley Delaware Court, LLC* (9th Cir. No. 14-55854) (August 23, 2016). Should an objection be filed and the Court consider the Trustee's motion to compromise as a sale, the Trustee believes that he has met the business judgment test. The Trustee notes there was no improper or bad faith motive. The Trustee believes that the $8,500,000 sum that resulted from the negotiations described more thoroughly above occurred at arms' length. In the Trustee's administration of the case and based upon his judgment, the resolution is appropriate under the circumstances. In the event someone believes that

the compromise amount is inadequate, the Trustee would evaluate and respond to any higher offer under terms equal to or better than those proposed under the compromise.

## X. CONCLUSION AND PRAYER

WHEREFORE, the Trustee prays for entry of an order authorizing him to compromise controversy with the Judgment Debtors, as described above and in the Notice and Opportunity for Hearing on Motion to Compromise Controversy With Judgment Debtor filed concurrently herewith.

DATED: November 20, 2020          DENTONS US LLP


By:     */s/Michael A. Isaacs*
        MICHAEL A. ISAACS
        Attorneys for MOHAMED POONJA,
        Trustee in Bankruptcy

12

15961045\V-2